ISRAEL SMITH *vs.* GILSON LEWIS.

In a suit for the breach of a contract containing mutual and dependent prom-
  ises of the plaintiff and defendant, the declaration, after setting out the acts
  to be concurrently done by the parties on a day named, alleged that the plain-
  tiff *was on that day ready and willing to perform all the acts to be by him*
  performed, specifying them, but that although he had performed everything
  on his part to be performed, the defendant had wholly refused to perform.
  Held, that, without considering what effect was to be given to the general
  averment of performance, and regarding only the averment of readiness and
  willingness to perform, the declaration was not insufficient in not alleging an
  offer to perform, since the refusal of the defendant to perform superseded the
  necessity of anything more on the part of the plaintiff than readiness and
  willingness to perform, and the averment of such refusal rendered the aver-
  ment of such offer unnecessary.
The word "tender" as used in connection with such a transaction, does not
  mean the same thing as when used with reference to the offer to pay money
  where it is absolutely due, but only the readiness and willingness to perform
  in case of the concurrent performance of the other party, with the present
  ability to do so, and notice to the other party of such readiness.
Where a case has been reserved by the superior court for the advice of this
  court, upon facts found by that court, and the parties heard on the questions
  of law arising on such facts, and judgment rendered by the court below in
  accordance with the advice given, this court will not, unless perhaps in very
  peculiar circumstances, again consider the questions of law arising on such
  facts, where the case is brought before them by proceedings in error.

ACTION for breach of covenant.

By the contract the defendant covenanted to convey to the
plaintiff, on the first day of April, 1852, certain real estate in

the town of Suffield, and to deliver to him certain personal property on the premises; the plaintiff covenanting concurrently to convey to the defendant, free from incumbrance, certain real estate situated in the town of Windsor, and pay him $2,000 in cash, and the price of the personal property, to be determined in a mode provided by the contract.

The part of the declaration on which the principal question in the case arose, was as follows:

" And the plaintiff saith that although on the said first day of April ensuing next after the making of said sealed instrument or indenture, he was ready and willing to pay to the plaintiff the said sum of two thousand dollars, and also, on said first day of April, was ready and willing to grant, release, sell and convey the premises, above described as situate in the town of Windsor, to the said defendant, by such conveyances, assurances, ways and means in the law, as he, the defendant, should reasonably require, and with such covenants and in such manner as were specified in and by said sealed instrument or indenture; and also, on said first day of April, was ready and willing to buy the aforesaid farming utensils and household furniture from the defendant and to pay therefor the sum in said sealed instrument or indenture mentioned, and to select an appraiser in the manner, and of the description, and for the purpose in said sealed instrument or indenture specified; and although the said plaintiff has always in all things well and truly observed, performed and fulfilled all things, in the said sealed instrument or indenture contained, on his part to be performed and fulfilled, to wit, at said Suffield; nevertheless the plaintiff in fact saith, that the defendant hath not performed, fulfilled or kept anything, in the said sealed instrument or indenture contained, on his part to be performed, fulfilled and kept, and did not, on said first day of April, A. D. 1852, or at any time previous thereto, grant, sell, release, convey or assure unto the plaintiff the aforesaid premises, above described as situate in said town of Suffield, by any conveyance or assurance whatsoever, but on the contrary thereof then and there wholly neglected and

refused so to do, and ever since has neglected and refused so to do."

The case was tried in the superior court on an issue closed to the court, and on a former occasion reserved for the advice of this court, on a special finding of the facts, as to the judgment to be rendered. This court having advised that judgment be rendered for the plaintiff, the superior court so rendered judgment, and the defendant thereupon filed a motion in error. The finding of the facts, as well as a more full statement of the case, will be found in the former report. See 24 Conn., 624.

*Hooker* and *Philleo*,[*] for the plaintiff in error.

We claim, in the first place, that the declaration is insufficient in not averring an offer to perform. It avers only that the plaintiff was ready and willing to perform. The law is

[*] This was the last occasion on which Mr. Philleo appeared at the bar of this court. The next term found him in declining health, and on the 30th day of June following he died at the age of thirty-six. It is proper that these reports, which contain the record of his occasional arguments, should also preserve a brief memorial of his life and character.

CALVIN WHEELER PHILLEO was born in Vernon, Oneida county, N. Y., on the 14th of June, 1822, and was the only son of the Rev. Calvin Philleo, then a preacher of considerable repute in the Baptist denomination, who survives him at the age of seventy-two years. During his childhood his father was settled for several years in Suffield, in this state. After receiving a good academical education, he studied law with the late Hon. George S. Catlin, of Windham. He was admitted to the bar of Hartford county in 1845, and in 1847 opened an office in Suffield, where he soon after married, and where he resided till his death.

Mr. Philleo attained to a considerable professional practice in the part of the county where he resided, and to a very respectable position at the Hartford county bar. His mind was eminently logical, and his briefs in the supreme court, which were generally expanded into full arguments, were fine specimens of logical reasoning. He was indefatigable in the preparation of his cases upon points of law, and often erred in overloading his argument with legal authorities. His delivery at the bar was less effective than a knowledge of his real ability would have led one to expect, owing in part to a diffuseness of style, and in part to a habit of pressing alike all the points of his case, without sufficient reference to their comparative importance. He was very faithful to his clients and made himself thoroughly master of the business intrusted to him. Had his life been spared and his attention devoted to his profession, he would have attained a position of more than ordinary eminence at the bar.

Smith *v.* Lewis.

laid down very clearly by Swift, (1 Sw. Dig., 193,) with regard to dependent and concurrent covenants, that "if one party is ready and has offered to perform his part, and the other party neglects or refuses to perform his, he who was ready and offered, has fulfilled his engagement and may maintain an action for the default of the other." See also 1 Chitty Pl., 325. Now as no place is named in the contract where the parties should meet and perform, either party proposing to perform would be bound to go to the house of the other to make known his purpose. But a mere readiness and willingness on the part of the plaintiff, with no offer to perform, is perfectly consistent with the supposition that he staid at his own house all the day, and waited for the defendant to call on him, or with the supposition that while he was at the defendant's house, ready and willing but doing nothing, the defendant was at the plaintiff's house, equally ready and willing, and waiting his return, and that the defendant's

His attention was, however, during the last few years of his life, in some measure diverted from the law to another and more attractive field of labor. While known to a comparatively few as a member of the legal profession, he had become known to thousands as a pleasing and graceful writer of fiction. He was himself of opinion that he had found in this department of literary pursuit his true vocation, and the reputation which his productions gave him was very gratifying to his ambition. A few months before his death he had commenced a serial, entitled "Akin by Marriage," in the Atlantic Monthly, just then commencing its existence, and his promised contributions to which were advertised by the publishers in advance as a recommendation to the public of their new enterprise. The first chapter of this serial, which is wholly descriptive, has rarely been surpassed in that style of writing. A former story, entitled "Twice Married," written as a contribution to Putnam's Monthly, then a leading magazine, was afterward published in a separate volume, both in this country, where it went through several editions, and in England. His contributions to the popular reading of the day were numerous, and were received by the public with decided favor. They evince a keen perception of the beauties of nature and of the salient points of human character as developed in social life, and especially in the country life of New England. He never attempted to deal with the profounder elements of character, or even with the truly heroic, but he thoroughly understood the drama of every day life, and was very felicitous in his sketches of its scenes.

Mr. Philleo had reached that happy point in human life, where a period of early struggles left behind, makes brighter by the contrast a future of seemingly sure reward. This future of his imagination he surrendered, keenly disappointed, yet with a placid mind, to the greater future of reality. R.

failure to perform was owing wholly to the accident of each waiting at the house of the other, and so failing to meet. If an actual tender of the money and deeds is not necessary, yet surely notice of some sort that the plaintiff is ready and willing to perform is necessary. The contract contemplates mutual acts to be done, not states of mind to be cultivated, and a mere readiness and willingness is nothing but the latter. Surely no duty for the neglect of which an action will lie, can arise on the part of either party, till the other has made some motion toward an offer to perform on his part. If it be not so, then a right of action might exist in favor of both parties and each be held liable to the other, since both might be ready and willing, but neither communicating his state of mind to the other, nothing happens to be done. A party in such case, to get a right of action against the other, must clearly take the initiative, and this can only be by an act, and that act must be an offer to perform, with an ability · to do so.

But it is claimed that the averment of the refusal of the defendant to perform, made an averment of an offer to perform unnecessary. But the averment that the defendant "neglected and refused to perform" is only the ordinary mode of averring that the defendant did not in fact perform. It was never supposed that such an averment had the effect of a notice to the other party that he would not perform and that therefore he need not trouble himself to prepare for a performance. All that the law can infer is that he did not perform, or was absent on the day fixed for performance, (as was in fact the case,) or that when the plaintiff called on him and proposed to pay him the money and deliver him the deed, he then declined to perform. The plaintiff had no right to demand of him whether he would perform or not, until he made the demand in connection with his own offer to perform, and the refusal alleged can not be taken to mean anything but a refusal after the plaintiff had offered to perform, and when the defendant could for the first time be called on to perform.

Smith *v*. Lewis.

Again it will be claimed that the plaintiff has alleged a complete performance on his part. But this is not alleged in the form of positive averment, and is entirely general, and in connection with the preceding allegations of readiness and willingness, in which the details of his readiness are given, is to be taken as meaning that he has in thus preparing to perform, and in being thus ready and willing, done all that he was bound to do.

Nor can it be claimed that the declaration is to be considered as made good by the verdict. There is no verdict here. The facts are specially found by the court, and by them it appears that the plaintiff not only did not perform, but did not even offer to perform, and not only so, but that the plaintiff had not prepared for performance, so as to be even ready to perform. The court finds that the defendant was absent from home on the day fixed by the contract for performance, and that the plaintiff had not procured the $2,000 which he was to pay to the defendant, nor had removed the mortgages from his land, of which there were three, but had made his arrangements so that if the defendant had returned, he could within a few hours have procured the money and releases from the mortgagees, subject to the ordinary contingencies attending such transactions.

The ground on which a defective declaration is sometimes held good after verdict, is that it is presumed that the jury would not have found the verdict without finding the fact that is imperfectly averred or omitted; but where all the facts are found, no such presumption can arise, so that a special finding can not aid a declaration unless such finding embraces such imperfectly alleged fact.

The defendant had a legal right to refuse to perform and take the consequences. He had a perfect right to be absent from home on that day. The plaintiff's rights were not enlarged by such refusal or absence, but he was bound still to do some act indicating a purpose to perform, at least to give notice at the defendant's house of his readiness to perform, if he wished to hold the defendant liable for non-performance.

It can not be inferred from the declaration that any notice whatever was given.

The counsel for the defendant were then proceeding to argue the case upon the questions presented by the finding of the court, when the chief justice inquired whether the questions were not the same that had been argued and decided at the former hearing of the case, when it was reserved for the advice of this court, and on being informed that they were, expressed an unwillingness to entertain them again; and after some discussion of the question by the counsel, the court decided that the questions arising on the finding of the court could not be considered as open for discussion.

*Robinson,* for the defendant in error.

The declaration is sufficient.

1. It alleges a complete performance on the part of the plaintiff, with technical correctness. *Varley* v *Manton.* 9 Bing., 363. *Wright* v. *Tuttle,* 4 Day, 313. The facts relied upon and proved by the plaintiff were a legal equivalent to performance, and if they were not technically admissible under a general allegation of performance, the objection should have been made at the trial, and the admission of the testimony assigned for error. *Robbins* v. *Luce,* 4 Mass., 474. *Reg. Gen.,* 18 Conn., 572.

2. Under the covenant described in the declaration, a tender or offer to perform was unnecessary. The plaintiff was to convey by such instruments as the defendant "should require." It was enough, that the plaintiff, until the request was made, should be ready and willing to execute a conveyance. *Poole* v. *Hill,* 6 Mees. & Wels., 835.

3. If an averment of an offer (in terms or in substance) were essential, the allegation that the plaintiff in addition to being ready and willing, also had "well and truly observed, performed and fulfilled all things (in the covenant) on his part to be performed and fulfilled," should be held, after verdict, to include an offer, if this was one of the plaintiff's duties under the agreement.

4. The allegations of the declaration are technically accurate. The plaintiff need neither aver nor prove an offer, when a refusal of the other party is set forth. A refusal will always either comprehend the idea of an offer and its rejection, or will excuse it. The precedents, therefore, generally omit the allegation of an offer as superfluous, when a refusal is stated. *Ferry* v. *Williams*, 8 Taunt., 62. *Granger* v. *Dacre*, 12 Mees. & Wels., 430. 2 Chitt. Pl., 5 Am. ed., 287, 320. 1 id., 284.

STORRS, C. J. On the argument of this writ of error, we have confined the counsel to those questions which were not decided by us in this case when it was presented at a former term for our advice as to what judgment ought to be rendered on the facts found in the superior court. (24 Conn., 624.) So far as this case is concerned, the points on which we then certified our opinion to that court, and in accordance with which the judgment was rendered which is now sought to be reversed, must be deemed to have been definitely decided. There was then an opportunity to argue them fully and they were carefully considered; and there would not only seem to be an incongruity in our entertaining a reargument of them in this form, but such a practice would produce great inconvenience, and indeed oftentimes frustrate one of the principal purposes for which questions are referred to us for our advice by the superior court, which is that it may be the foundation for ulterior proceedings in that court. It is unnecessary to determine whether there may not be very peculiar circumstances, which might induce us, on a proper application by a party in a case which has been decided by us, to allow a reargument of questions involved in it; it is sufficient in the present case that there are no reasons for such an indulgence which would not exist in every other.

Under this decision, the only question left for us to consider in this case, is, whether the declaration is sufficient. The only exception taken to it by the plaintiff in error, and to which alone therefore we shall confine our attention, is,

that it does not allege that the plaintiff offered to perform those acts which by the agreement declared on he promised to do. We are clearly of opinion that this objection is not sustainable. That agreement contained mutual and dependent promises between these parties, which were to be performed by them concurrently, and therefore at the same time. The declaration, after setting out the acts to be done by them respectively, and alleging a readiness and willingness on the part of the plaintiff to perform all the acts to be done by him, particularly describing them, on the day mentioned in the agreement for their performance, and also, generally, a complete performance by him of all the things in the said agreement contained on his part to be performed, avers that "the defendant hath not performed, fulfilled, and kept anything in said agreement contained on his part to be performed, fulfilled, and kept, and that he did not on that day or at any time previous thereto, perform those acts, particularly describing them, but, on the contrary thereof, then and there wholly neglected and refused, and ever since has neglected and refused so to do." Without relying on the general averment of performance, or inquiring whether, after verdict, in which light this declaration is to be treated, that averment should, as the plaintiff claims, be deemed to supply the want of the formal allegation insisted on by the defendant, we think that the refusal of the defendant to perform the agreement on his part, when the plaintiff was ready and willing to perform it on his part, superseded the necessity of any further acts towards a performance by the latter, even if, under any circumstances, it would have been necessary to go further and allege a tender or offer by the plaintiff; and therefore that the declaration shows that the plaintiff did all that it was necessary for him to do in order to maintain this action. The refusal of the defendant to perform would render such an offer a futile act, which the law did not require. The objection of the defendant, that the declaration should have stated an offer or tender by the plaintiff in addition to a refusal by himself, amounts to a claim that a performance by the plaintiff, or that which is equivalent, ought to have been

alleged; because such tender and refusal would, in law, be considered equivalent to a performance. But clearly such performance was not necessary, and therefore need not be alleged, because, as the agreement required only that the acts of both the parties should be done at the same time, neither was obliged to do the first act, or consequently to perform his part of the agreement without or before the other. The plaintiff, in order to sustain this action, need only show that he did what the law required of him; and all that it required was, that he should be ready and willing to perform on his part if the defendant was also ready to perform on his. The plaintiff was clearly not bound to convey his land to the defendant and pay him the money for his utensils and furniture, unless the latter was ready to convey his land to the plaintiff according to the agreement. Consequently a readiness by the plaintiff to perform, provided the defendant was also ready, is equivalent to what the former was bound to do when the latter refused to perform on his part, and an averment of such readiness on the part of the plaintiff is sufficient. Some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case of mutual and concurrent promises. The word "tender," as used in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it and nothing further remains to be done, but the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender in the sense in which those terms are used in reference to the kind of agreements which we are now considering. It is not an ab-

solute, unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement. Hence the declaration states what amounts to a tender or offer by the plaintiff as properly understood in reference to this subject. The authorities fully sustain the principles which we have laid down, and nearly in the same terms, and most explicitly sanction the mode of declaring adopted in this case. A reference to them only is necessary. *Morton* v. *Lamb*, 7 T. R., 125. *Rawson* v. *Johnson*, 1 East, 203. *Waterhouse* v. *Skinner*, 2 Bos. & Pul., 447. *Ferry* v. *Williams*, 8 Taunt., 62. *Norwood* v. *Read*, Plowd., 180.

It will be seen, that in several of these cases, the declaration was, in respect to the point before us, framed exactly like the present, and that they turned on the necessity of the averment on which the defendant insists. We would add that, although this case was not formerly presented to us in the form of an objection to the declaration, the principles then adopted by us most fully sustain its sufficiency in respect to the exception now urged against it. It was then admitted by the counsel for the defendant, that his conduct as there claimed to be disclosed, that is, his intentional absence from the place where the agreement was to be performed, constituted in law a refusal on his part to perform it, and that in case of such refusal, it was sufficient for the plaintiff, to show a readiness and willingness to perform on his part, and it being determined by us that these two facts sufficiently appeared on the finding, judgment was advised for the plaintiff. The judgment complained of is therefore affirmed.

In this opinion the other judges concurred.

Judgment affirmed.